UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SANDRA L. FERGUSON,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN J. WAID AND THE WAID MARITAL COMMUNITY,<br><br>Defendants. | Case No. C17-1685RSM<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

## I.  INTRODUCTION

A bench trial was held in this matter from November 13, 2018, to November 14, 2018, with exhibits submitted by both parties and live testimony from Counterclaimant Brian J. Waid and one other witness. This case was unusual in the sense that Sandra Ferguson, Defendant to Mr. Waid's counterclaims, waived her right to present witnesses and evidence. *See* Dkts. #158, #162, #169, and #170. Nevertheless, her counsel elicited testimony and submitted some exhibits during cross examination.

The parties had previously prepared proposed Findings of Fact and Conclusions of Law, Dkt. #167 and #171.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 1

The key issues at trial were: 1) whether Mr. Waid has established the elements of his defamation claim against Ms. Ferguson, including whether her actions demonstrate actual malice; 2) Ms. Ferguson's affirmative defense of truth to that claim; 3) Mr. Waid's civil harassment claim; and 4) the appropriate relief for these claims.

## II. CREDIBILITY OF THE WITNESSES

The trial court is empowered to judge the credibility of the witnesses. *See Spokane Arcade, Inc. v. City of Spokane*, 75 F.3d 663, 665 (9th Cir. 1996); *Zivkovic v. S. Cal. Edison Co.*, 105 Fed. Appx. 892, 893 at n.1 (9th Cir. 2004) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575, 84 L. Ed. 2d 518, 105 S. Ct. 1504 (1985)).

The Court specifically finds that the witnesses Brian Waid and Kathleen Nelson were credible. Their answers during testimony were complete and appeared honest, and their demeanor on the witness stand leads the Court to conclude that they were truthful.

## III. FINDINGS OF FACT

"In an action tried on the facts without a jury... the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a). The following findings of fact are made by the Court and based upon a preponderance of the evidence presented at trial and the above credibility analysis.

1. Counter-Plaintiff Brian J. Waid is an attorney licensed to practice law in Washington. His practice focuses on legal malpractice and fee dispute claims. He has practiced law in multiple state and federal courts for more than 42 years. He has never been the subject of disciplinary action by any court or bar association.

2. Counter-Defendant Sandra Ferguson is an attorney licensed to practice law in Washington. She has practiced as a litigation attorney for more than 24 years.

3. In April 2011, a dispute arose between Ms. Ferguson and her co-counsel, Stephen Teller, over the apportionment of attorneys' fees obtained through their clients' settlement in an employment discrimination case (hereinafter, the "SEBS" case). Many of the details of that settlement are confidential.

4. At the time the fee dispute arose, Ms. Ferguson was temporarily suspended from the practice of law in Washington State.

5. Ms. Ferguson retained Mr. Waid to represent her in her dispute with Mr. Teller. Mr. Waid represented her from May 4, 2011, to February 13, 2012.

6. The crux of the dispute between Ms. Ferguson and Mr. Teller was that Mr. Teller believed they had an agreement for a 50/50 split of the attorneys' fees obtained in the case, and Ms. Ferguson believed she should receive 90 percent of the fees under quantum meruit.

7. Before retaining Mr. Waid as counsel, Ms. Ferguson developed the legal theories to support her claim to 90 percent of the fees, including quantum meruit and the alterative theory of breach of contract. Email records show that Ms. Ferguson was a driving force behind the strategy and actions Mr. Waid took on her behalf, more so than a typical client.

8. From the outset of the fee dispute, Ms. Ferguson consistently maintained that the attorneys' fee portion of the settlement should be deposited into a neutral account while the dispute between her and Mr. Teller was resolved.

9. Prior to entering into a retainer agreement with Mr. Waid, Ms. Ferguson reviewed and analyzed *Mazon v. Krafchick*, 158 Wn.2d 440, 144 P.3d 1168 (2006), a co-counsel fee dispute case in Washington in which the Washington Supreme Court

adopted the "bright-line rule that no duties exist between cocounsel that would allow recovery for lost or reduced prospective fees." Ms. Ferguson's analysis of the Court's ruling in *Mazon v. Krafchick* was that it only prevented her from suing Mr. Teller for the value of what she believed she would have received had Mr. Teller not settled the case in her absence.

10. Ms. Ferguson and Mr. Waid met in person on May 4, 2011, to discuss Ms. Ferguson's legal theories for obtaining more than 50 percent of the fees. During the meeting, Ms. Ferguson signed a retainer agreement with Mr. Waid. The agreement provided that Mr. Waid "shall have a lien against any proceeds recovered by, or on behalf of, CLIENT in connection with the claims arising out of the matter described in this Agreement, including pursuant to RCW 64.4.010, et seq."

11. On May 6, 2011, Mr. Teller filed a Petition for Adjudication of Attorney Liens in the SEBS case, arguing that, if the court should find that quantum meruit applies, Ms. Ferguson may be entitled to less than 50 percent or even nothing. Ms. Ferguson reviewed Mr. Teller's petition and asked Mr. Waid to prepare and file an opposition to it. She also prepared a 25-page declaration in support of the opposition.

12. Following her retention of Mr. Waid, Ms. Ferguson discussed with him her options for resolving the dispute with Mr. Teller, including potentially filing a lawsuit against Mr. Teller. The SEBS court denied Mr. Teller's May 6 petition, and essentially advised the parties to file a separate cause of action to litigate the fee dispute.

13. Ms. Ferguson actively participated in prosecuting her claims against Mr. Teller. She made strategic decisions and drove the litigation to achieve her ultimate goal of

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 4

precluding Mr. Teller from receiving more than 10 percent of the fees. Throughout Mr. Waid's representation, he and Ms. Ferguson exchanged hundreds of emails and numerous phone calls regarding the lawsuit. Ms. Ferguson also conducted significant independent research related to her claims against Mr. Teller. On May 20, 2011, Ms. Ferguson directed Mr. Waid to file a complaint. Ms. Ferguson reviewed and edited drafts of the complaint, which was filed on May 27, 2011. It alleged cause of action for declaratory judgment under a quantum meruit theory, negligent misrepresentation, and breach of contract in the alternative.

14. On June 1, 2011, a former client of Mr. Waid named Reba Weiss contacted him proposing to act as an intermediary between Mr. Teller and Ms. Ferguson to discuss a resolution of the dispute. Immediately after the phone call, Mr. Waid emailed Ms. Ferguson informing her about the content of the phone conversation and that he knew Ms. Weiss because she was a former client of his at his previous firm. After Mr. Waid left his previous firm in 2009, he did not retain any financial interest in Ms. Weiss' case or any other case.

15. Mr. Waid later called Ms. Weiss one final time to discuss the case and informed Ms. Ferguson about the content of that second phone call. These two calls were the only communications Mr. Waid had with Ms. Weiss outside of taking her deposition later in the case.

16. Mr. Waid also had a phone conversation with an attorney from his previous firm, Robert Gould, on June 14, 2011, after Mr. Teller had identified Gould as his expert. Mr. Waid immediately notified Ms. Ferguson of the content and the fact of his conversation with Mr. Gould.

17. Mr. Waid did not divulge any confidential or privileged information to either Ms. Weiss or Mr. Gould. Ms. Ferguson also never voiced an objection to Mr. Waid's continued representation of her after the communications with Ms. Weiss and Mr. Gould occurred.

18. In July of 2011 Teller and Ferguson stipulated to depositing the funds in dispute into the court registry. Ms. Ferguson agreed to the stipulation and knew that Mr. Waid was signing the stipulation on her behalf. The fees were actually deposited in early August 2011 through no fault of Mr. Waid.

19. In July of 2011, Teller and Ferguson engaged in mediation, with the mediator recommending a 60/40 split in favor of Ms. Ferguson. Ms. Ferguson did not take Mr. Waid's advice and rejected the recommendation. Ms. Ferguson knew it was a risk to reject the mediator's recommendation and continue prosecuting her claims after mediation. However, she consistently maintained that she would rather spend her portion of the attorneys' fees to pay Mr. Waid's fees than allow Mr. Teller to receive more than she thought he deserved.

20. Ms. Ferguson knew that a summary judgment motion would be necessary to obtain any disbursement from the court registry. She and Mr. Waid began discussing filing such a motion in July 2011. To save on attorneys' fees, Ms. Ferguson wanted to prepare her own declaration in support of the motion. The parties obtained summary judgment hearing dates in late October 2011 for cross-motions for summary judgment. Although Ms. Ferguson had several months to prepare her declaration, she failed to provide a declaration to Mr. Waid before the deadline for filing the summary judgment motion, despite numerous reminders by Mr. Waid.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 6

21. In early October 2011, Mr. Teller filed a 12(c) motion for judgment on the pleadings to dismiss Ms. Ferguson's complaint. Mr. Teller raised *Mazon v. Krafchick* for the first time in his reply brief. In emails discussing the issue, Ms. Ferguson stated "I guess we can't really get around Krafchick huh?"

22. During oral argument on that motion, Mr. Waid conceded the breach of contract claim. Ms. Ferguson was present at the hearing and did not object to Mr. Waid's concession of the claim. Although Mr. Waid argued to the contrary, the Teller court also determined that the negligent misrepresentation claim should be dismissed under the rationale of *Mazon v. Krafchick*.

23. Numerous emails after the hearing indicate that Ms. Ferguson was happy with the outcome, *e.g.* stating that the withdrawal of the breach of contract claim "was a strategy decision that most likely paid off."

24. Following the October 2011 decisions on the parties' cross-dispositive motions, Mr. Waid and Ms. Ferguson again discussed filing a summary judgment motion to obtain a disbursement of money from the court registry. Again, Ms. Ferguson insisted on preparing the declaration for the motion, but then failed to prepare the declaration or a sufficient statement of facts. The parties asked the court for January hearing dates for cross-motions requesting declaratory judgment regarding the quantum meruit claim and the existence of a 50/50 contract.

25. The night before her motion was due to be filed, Ms. Ferguson provided Mr. Waid with an unusable, partially-finished declaration that was 327 pages long, not including exhibits. Because Ms. Ferguson's testimony was necessary for the Court to find the specific value of the services performed by Ms. Ferguson's under the

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 7

quantum meruit theory, Mr. Waid could not file a motion requesting disbursement of a specific amount of fees. Instead he filed a motion for declaratory judgment that no contract existed between the parties and the division of fees should be decided on a quantum meruit basis.

26. At the January 27, 2012 oral arguments on the cross-motions, the Teller court found as a matter of law the existence of an express contract between the parties to divide the attorneys' fees 50/50. The court reserved ruling on Ms. Ferguson's argument that her suspension from the practice of law was a condition subsequent that rendered the contract unenforceable such that the division of fees should be determined on a quantum meruit basis.

27. On January 30, 2012, the Teller court issued its final order on the parties' crossmotions for summary judgment, finding that Ms. Ferguson's suspension did not void the parties' 50/50 contract and dismissing Ms. Ferguson's quantum meruit claim.

28. Following the court's order, Mr. Teller filed a motion for disbursement of the funds in the court registry. In that motion, he requested interest and Rule 11 sanctions against Ms. Ferguson.

29. On February 9, 2012, Ms. Ferguson advised Mr. Waid that she intended to retain new counsel to respond to Mr. Teller's disbursement motion. Subsequently, in a phone conference, a conflict of interest arose when Ms. Ferguson accused Mr. Waid of malpractice. Mr. Waid informed Ms. Ferguson of the conflict during the phone conference. Immediately following the conference, he sent her an email, detailing the conflict of interest and notifying her of his intent to withdraw immediately.

30. After notifying Ferguson of his intent to withdraw, Mr. Waid consistently assured Ms. Ferguson that he would help her with transitioning to another counsel, including meeting with the new counsel to discuss the pending issues.

31. Ms. Ferguson did not object to Mr. Waid's withdrawal as long as he obtained a 30-day extension for her to respond to Mr. Teller's pending motion for disbursement. In an email to Mr. Waid, she stated: "I want a continuance to get new counsel. That is my first choice. If I have to respond w/o a continuance, I object to your withdrawal and you must respond."

32. As requested, Mr. Waid obtained the extension, and following an emergency hearing on February 13, the court authorized Mr. Waid's withdrawal. Subsequently, Ms. Ferguson filed an objection and requested an evidentiary hearing. During the evidentiary hearing, the court confirmed approval of Mr. Waid's withdrawal for good cause and found that no material prejudice to Ms. Ferguson would result.

33. Following his withdrawal, Mr. Waid helped Ms. Ferguson and her new counsel defend against Mr. Teller's sanctions request, including preparing a 17-page declaration that Ms. Ferguson filed in support of her opposition to the motion. Ultimately, the court denied Mr. Teller's request for Rule 11 sanctions against Ms. Ferguson.

34. After his withdrawal, Mr. Waid filed and served a notice of lien against the monetary proceeds Ms. Ferguson received because she had not paid him for the invoiced legal services he performed. The amount remaining due and owing by Ms. Ferguson and her firm totaled $77,248.35, of which $6,155.98 represented litigation expenses. The retainer agreement Ms. Ferguson signed expressly granted Mr. Waid

an attorney lien in the event Ms. Ferguson failed to pay his fees and costs. Mr. Waid had invoiced Ms. Ferguson for services rendered every month, and Ms. Ferguson did not object to a single charge during his representation. Nor did she object to any charges during the motions practice related to the lien or the subsequent appeal.

35. Although this lien was challenged by Ms. Ferguson, on December 30, 2013, the Washington Court of Appeals determined that Waid's lien was valid pursuant to the parties' fee agreement and under the attorney lien statute, RCW 60.40.

36. In 2014, Ms. Ferguson filed a complaint against Mr. Waid in King County Superior Court asserting claims for professional negligence, breach of contract, breach of fiduciary duty, fraud, conversion, and Washington Consumer Protection Act ("CPA") violations (hereinafter "2014 lawsuit"). On July 19, 2015, the court dismissed with prejudice the breach of contract, breach of fiduciary duty, fraud, and conversion claims because Ms. Ferguson "failed to come forward with objective evidence, as opposed to allegations and argument, to defeat [the] motion for summary judgment."

37. The Sunday night before the trial date of November 30, 2015, Ms. Ferguson's attorney Emily Rains communicated to Mr. Waid's attorney Kathleen Nelson, via the phone, that settlement would not be possible because the dispute was no longer about money, it was about "dragging [Mr. Waid's] name through the mud."

38. Ms. Ferguson's remaining claims were dismissed without prejudice on November 30, 2015. This was because Ms. Ferguson's counsel, Emily Rains, did not show up for trial and Ms. Ferguson herself appeared late, indicating that she was not prepared for trial.

39. Also in the courtroom on November 30, 2015, Ms. Ferguson stated words to the effect that Mr. Waid deserved to suffer, and "this is not over Brian."

40. The next day, Ms. Ferguson filed a second lawsuit against Mr. Waid asserting the same facts and three of the same claims as the 2014 lawsuit—breach of fiduciary duty, professional negligence, and CPA violations (hereinafter 2015 lawsuit). Subsequently, Ms. Ferguson filed an appeal of the summary judgment dismissal and Rule 41 dismissal of her claims in the 2014 lawsuit. As a result, the court stayed the 2015 lawsuit pending the outcome of the appeal. Ultimately, Ms. Ferguson's appeal was dismissed because she failed to file her opening brief by the deadline despite the appellate court granting several extensions. Mr. Waid's appeal of the dismissal of his counterclaims is still pending.

41. There were more lawsuits filed by Ms. Ferguson. On January 3, 2017, Ms. Ferguson and Robert E. Caruso filed a federal lawsuit in which they sought to have this Court declare that the Washington State Bar Association ("WSBA") lawyer disciplinary system is unconstitutional under 42 U.S.C. § 1983 and that the discipline system violates their constitutional rights under the First, Fifth, and Fourteenth Amendments (hereinafter "*Caruso/Ferguson*").

42. On May 11, 2017, this Court dismissed the Caruso/Ferguson complaint without leave to amend. On May 23, 2017, this Court found the Caruso/Ferguson complaint to be "both baseless and made without a reasonable and competent inquiry" and concluded that it was "frivolous." The Court then imposed sanctions against Ms. Ferguson's attorney, Stephen Eugster, for filing a "frivolous" complaint on behalf of Ms. Ferguson and Mr. Caruso.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 11

43. On July 3, 2017, Ms. Ferguson filed a "Motion to Vacate Judgment and Amend Pleading under Fed. R. Civ. P. 59(e) or 60(b)(2) and 60(b)(6)," in which she asserted that "Waid is a proper defendant in this lawsuit because he is acting in concert with state (WSBA) officials to deprive Ferguson of her liberty and property interests to pursue her profession."

44. On July 31, 2017, this Court denied Ms. Ferguson's Motion to Vacate Judgment and Amend the Complaint, noting that "even if it were procedurally proper to review the evidence and argument presented by Ms. Ferguson, such would likely not be sufficient to change the outcome of this case for the reasons articulated by Defendants in their Response." Ms. Ferguson and Mr. Caruso appealed the Court's dismissal of the original complaint. Ms. Ferguson also appealed the denial of the motion to amend. The Ninth Circuit affirmed this Court's rulings.

45. In July of 2017, Ms. Ferguson published a "client review" of Mr. Waid on the attorney-rating website Avvo.com. Ms. Ferguson's review stated, in part:

> I am an attorney. However, the opinions expressed in this review are based on my personal experience as a former client of this attorney, Brian J. Waid. I consulted and retained Brian Waid in April 2011 regarding a contact [sic] dispute matter. He represented me until December 10, 2012, the date he abandoned me on a false pretext while an important motion was pending. Let me state it unequivocally: Brian J. Waid is a PREDATOR and a FRAUD. He should be prosecuted as a white collar criminal. However, this decision is not within my control. But I can write this review to warn and hopefully, prevent others from becoming future victims of Attorney Waid. I am not Waid's only victim. I assisted one of his other clients to find capable counsel. We have both filed civil suits against Waid for malpractice, false and deceptive business practices, and fraud. . . . Here is what Waid did to me: (1) he failed to enforce my priority lien over the money that was in dispute; (2) he advised me to file a lawsuit instead of using a more cost-effect [sic] procedure that was available, so that he could fraudulently charge, bill and collect fees from me for his worthless legal

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 12

services; (3) he concealed and failed to disclose to me that he had a conflict of interest; (4) he deposited and left $265,000 of my money in the court registry. . . he [] abandoned me, lying to the court so that he would be allowed to withdraw over my objections. . . . By similar methods, Waid's other client-victim was bilked of hundreds of thousands of dollars by Waid and his co-counsel.

Dkt. #6-2.

Ms. Ferguson repeated these statements in a second internet posting on August 11, 2017, that was titled "This Lawyer Reported for Fraud." In addition to the above statements, the second posting also stated that Mr. Waid "violated the professional ethics rules," and had been reported by her "to the Washington State Bar Association and to law enforcement authorities for engaging in criminal conduct (fraud)."

46. The references to "other clients" refers to Angela Oppe, a former client of Mr. Waid's. Mr. Waid was local counsel for Ms. Oppe; her Maryland attorney was Spencer Hecht. Mr. Waid was retained two months after the complaint was filed. Pursuant to the co-counseling agreement signed by both attorneys and Ms. Oppe, Mr. Hecht made all strategy decisions, including preparing and arguing the summary judgment motions. Mr. Waid charged Ms. Oppe approximately $15,000 for his services, and expressly advised Ms. Oppe not to appeal the dismissal of her case.

47. On November 9, 2017, Ms. Ferguson filed the present lawsuit against Mr. Waid based on the same legal theory and same set of facts as her proposed second amended complaint in the *Caruso/Ferguson* matter. Like in the *Caruso/Ferguson* proposed amended complaint—which this Court noted was deficient and refused to allow to be filed—the instant case's Complaint alleges that, "based on 42 U.S.C. §

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 13

1983," Mr. Waid "is engaged in unlawful joint activity with WSBA officials to deprive [Ms. Ferguson] of her liberty and property interests to pursue her profession, her right to the exercise of free speech, and her right to equal employment opportunities, regardless of gender and/or race."

48. This Court granted judgment on the pleadings, finding that Ms. Ferguson's claims in this case were frivolous as a matter of law. This Court also imposed Rule 11 sanctions against Ms. Ferguson.

49. In his Answer to the Complaint, Mr. Waid asserted counterclaims of defamation per se and civil harassment, on which this matter proceeded to trial on the merits. In the defamation claim, Mr. Waid requested general damages for emotional harm, including but not limited to emotional distress; loss of enjoyment of life; humiliation; emotional pain and suffering; personal indignity; embarrassment; fear; anxiety; damage to reputation; and mental anguish. Mr. Waid requested injunctive relief under the civil harassment claim.

50. Mr. Waid has never been convicted or even charged with a crime, other than traffic violations, and has never been reprimanded by the WSBA.

## IV. CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and this dispute. Although the remaining claims are brought solely under state law, this case was originally filed with federal claims, and the Court has, in its discretion, retained supplemental jurisdiction under 28 USC § 1367.

2. The Court has already reached several relevant legal rulings regarding Mr. Waid's counterclaims. *See* Dkts. #85, #94, #150, and #157.

3. Under Washington law, to prevail on a defamation claim, a plaintiff generally has the burden to prove the following elements: (1) a false statement, (2) the statement was unprivileged, (3) fault, and (4) the statement proximately caused damages. *See Mark v. Seattle Times*, 96 Wn.2d 473, 486, 635 P.2d 1081 (1981); *Mohr v. Grant*, 153 Wn.2d 812, 822, 108 P.3d 768 (2005).

4. However, "defamatory words spoken of a person, which in themselves prejudice him in his profession, trade, vocation, or office, are slanderous and actionable per se unless they are either true or privileged." *Id*. at n. 1 (quoting *Waechter v. Carnation Co.*, 5 Wn. App. at 126, 485 P.2d 1000 (1971). Statements that are defamatory per se are presumed to be false. *Roper v. Mabry*, 15 Wn. App. 819, 824 n. 3, 551 P.2d 1381, 1386 (1976)

5. "Truth is an absolute defense to a per se defamatory statement." *Maison de France, Ltd. v. Mais Oui!, Inc.*, 126 Wn. App. 34, 44, 108 P.3d 787 (2005). "With respect to falsity, Washington does not require a defamation defendant to prove the literal truth of every claimed defamatory statement" and a defendant "need only show that the statement is substantially true or that the gist of the story, the portion that carries the 'sting', is true." *Mohr*, 153 Wn.2d at 825 (internal citations and quotations omitted).

6. "A defamatory publication is [defamatory] per se (actionable without proof of special damages) if it (1) exposes a living person to hatred, contempt, ridicule or obloquy, to deprive him of the benefit of public confidence or social intercourse, or (2) injures him in his business, trade, profession or office." *Maison de France*, 126 Wn. App. at 44 (quoting *Caruso v. Local 690, Int'l Bhd. of Teamsters*, 100 Wn.2d 343, 353, 670 P.2d 240 (1983)). "A publication is also [defamatory] per se if it imputes to the plaintiff criminal conduct involving moral turpitude." *Id*.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 15

7. The standard of fault is determined by the type of plaintiff, public or private, and whether a qualified privilege exists. If the plaintiff is merely a private individual, a negligence standard of fault applies. *Caruso*, 100 Wn.2d at 352. Actual malice is a heightened standard of fault that applies if the subject person is a public figure or a qualified privilege exists; malice is "knowledge of the falsity or reckless disregard of the truth or falsity of the statement." *Maison de France*, 126 Wn. App. at 44 (internal quotations omitted).

8. If statements are defamatory per se, damages are presumed, and no proof of actual damages is required. *Id.* at 54. "[W]here no matters of public concern are involved, presumed damages to a private plaintiff for defamation without proof of actual malice may be available." *Id.*

9. The Court already found that the allegedly defamatory statements above were defamatory per se unless Ms. Ferguson could establish a truth defense at trial.

10. This Court also previously found that Ms. Ferguson's statements were unprivileged and did not involve matters of public concern as a matter of law.

11. The Court has considered the evidence presented at trial, the exhibits admitted into evidence, the arguments of counsel and, being fully advised, finds that Ms. Ferguson cannot prove the truth of the statements she published in the Avvo reviews. Mr. Waid did not engage in the criminal, fraudulent, and unethical conduct of which Ms. Ferguson accuses him. Mr. Waid has not violated any Washington state criminal laws. Nor has Mr. Waid violated any applicable ethical rules that govern attorneys. Mr. Waid did not abandon Ms. Ferguson on a false pretext while an important motion was pending; he did not fraudulently charge, bill, and collect fees from Ms. Ferguson; he did not advise

her to file a lawsuit instead of following a more cost effective procedure that was available; he did not conceal and fail to disclose a conflict of interest; he did not lie to the court so he could withdraw over Ms. Ferguson's objections; he did not bilk Ms. Ferguson or any other client out of hundreds of thousands of dollars. These statements were false.

12. Although Mr. Waid could have proceeded under the negligence standard of fault, and the Court would have found that he established negligence, the Court finds he has established that Ms. Ferguson acted with actual malice. She had personal knowledge of all the relevant events, testimony, and court decisions before she published her false statements and therefore knew that such statements were false accusations of criminal and unethical conduct at the time she published them. As the Court has ruled previously, these were not opinions but were statements of fact.

13. The Court finds Ms. Ferguson liable on Mr. Waid's defamation per se counterclaim and awards Mr. Waid presumed general damages in the amount of $50,000. This amount of damages is based on the evidence at trial of Mr. Waid's emotional distress and the presumed impact of the defamatory statements on his business. The Court considers this a conservative number given the evidence.

14. Under Washington law, "unlawful harassment" is defined as "a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose." RCW 10.14.020. Such a course of conduct must "be such as would cause a reasonable person to suffer substantial emotional distress" and must actually cause that distress. *Id*. "Course of conduct" means "a pattern of conduct composed of a series of

acts over a period of time, however short, evidencing a continuity of purpose," but does not include constitutionally protected free speech. *Id.* Any form of communication or contact can qualify, including electronic communications. *Id.*

15. Defamatory statements are not constitutionally protected activity. *See Vern Sims Ford, Inc. v. Hagel*, 42 Wn. App. 675, 683-84, 713 P.2d 736, 741 (1986) (finding that "[a]ccusations of criminal activity, even in the form of opinion, are not constitutionally protected"); *Duc Tan v. Le*, 177 Wn.2d 649, 666, 300 P.3d 356, 365 (2013); *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 743, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983). Lawsuits, if considered frivolous or baseless, do not qualify as constitutionally protected free speech. *See Bill Johnson's Restaurants*, 461 U.S. at 743.

16. Over the past four years, Ms. Ferguson has engaged in a course of conduct specifically aimed at harassing Mr. Waid, including publishing defamatory statements about him on his Avvo webpage and filing—or attempting to file—four separate lawsuits against Mr. Waid. The record demonstrates that Ms. Ferguson's initial legal claims against Mr. Waid have been dismissed or stayed pending appeal, yet she has continued to pursue claims against him in federal court, claims that were found to be frivolous and in violation of Rule 11.

17. Ms. Ferguson's conduct in prosecuting her multiple actions against Mr. Waid demonstrates that they lack a reasonable basis and were brought for the improper purpose of harassing Mr. Waid. These lawsuits have in fact caused unnecessary expense and emotional distress to Mr. Waid.

18. Ms. Ferguson's defamatory statements above were also part of this course of conduct, for the purpose of harassing Mr. Waid, and resulted in unnecessary expense and emotional distress to Mr. Waid.

19. The Court finds Ms. Ferguson liable on Mr. Waid's civil harassment counterclaim and that an injunction will be issued in a separate order to protect Mr. Waid from further harassing conduct. However, Ms. Ferguson will not be enjoined from filing appeals in this case or any other previously filed matter brought against Mr. Waid.

20. The Court notes that it would have the authority, in the alternative, to issue a vexatious litigant order against Ms. Ferguson enjoining her from filing further lawsuits against Mr. Waid. Ms. Ferguson has had notice and an opportunity to respond to this type of requested relief at trial in this case.

21. None of the above findings of fact or conclusions of law would be different if the Court had considered at trial the declaration of Peter Jarvis, Dkt. #29-2 at 62–70.

22. The clerk shall enter judgment accordingly. This matter is now CLOSED.

It is so ORDERED.

DATED this 19 day of November, 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE